[No. F040764. Fifth Dist. Nov. 26, 2002.]

In re H. A. et al., Persons Coming Under the Juvenile Court Law.
KERN COUNTY DEPARTMENT OF HUMAN SERVICES, Plaintiff and
Respondent, v.
ROBERTA A., Defendant and Appellant.

**COUNSEL**

Kathleen M. Mallinger, under appointment by the Court of Appeal, for Defendant and Appellant.

B. C. Barmann, Sr., County Counsel, and Tom Clow, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**VARTABEDIAN, Acting P. J.**—Roberta A. appeals from orders terminating her parental rights (Welf. & Inst. Code, § 366.26)[1] to her daughters, H. and F. Earlier in the proceedings, there was evidence the girls might be Chumash Indian and eligible for membership in a federally recognized Indian tribe, known as the Santa Ynez Band of Chumash Mission Indians of the Santa Ynez Reservation (the Santa Ynez Band). Appellant contends the court erred in terminating her rights absent proof of proper notice to the tribe, within the meaning of the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.).

On review, we agree and will reverse. We publish our decision to call attention to the imperative of complying with the letter of the ICWA. In addition, we expect social service entities to make a better record of their compliance with the ICWA.

### PROCEDURAL AND FACTUAL HISTORY

Three-year-old H. and one-year-old F. have been dependent children of the Kern County Superior Court since July 2001. The circumstances underlying their dependency status, out-of-home placement and need for permanent planning are not crucial to this appeal. What is relevant are the following representations contained in the social worker's assessment for the section 366.26 hearing.

"On September 4, 2001, the children's maternal grandmother, Maria R., stated that she is of American Indian heritage, specifically, Chumash Indian through the San [*sic*] Ynez Tribe in San Ynez, California. On February 6, 2002, requests for confirmation of the children's Indian status was [*sic*] sent to the Bureau of Indian Affairs in Sacramento, California, for the children, [H.] and [F.]. On February 6, 2002, a hearing notice was sent to the Bureau of Indian Affairs by certified mail notifying them of the hearing pursuant to Welfare and Institutions Code section 366.26 scheduled for May 29, 2002. On February 8, 2002, request for confirmation of the children's Indian status and a hearing notice for the hearing pursuant to Welfare and Institutions Code section 366.26 scheduled for May 29, 2002, was sent by certified mail to the San [*sic*] Ynez Tribal Health Clinic in San [*sic*] Ynez, California. Further, on March 21, 2002, an [ICWA] referral for the children, [F.] and [H.], was sent to the San [*sic*] Ynez Band of Mission Indians in San [*sic*] Ynez, California. On February 15, 2002, George Armenta, Enrollment Committee Chairman, San [*sic*] Ynez Band of Mission of [*sic*] Indians, sent a

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

response to the Kern County Department of Human Services stating [H.] and [F.] have no affiliation with the San [*sic*] Ynez Band of Mission Indians. After reviewing all roles [*sic*] and descendency lists, the San [*sic*] Ynez Band of Mission Indians cannot identify the children as enrollment members, or in a line of lineage to the San [*sic*] Ynez Chumash Tribe. Enrollment committee notes were attached to this stating that Roberta A. is Chumash, but her enrollment number is unknown, as is that of the maternal grandmother, Maria R."

The social worker did not attach to his report any copies of the notices given, proofs of the certified mail, the returned receipts, or the response sent by Armenta. In addition, no one, not the court, respondent Kern County Department of Human Services (the Department), counsel for the minors, nor counsel for appellant made any reference to these representations at the section 366.26 hearing. Instead, that hearing addressed the mother's modification petition (§ 388) to seek more time for reunification efforts and her claim the children should have a continued relationship with her. At the conclusion of the hearing, the court terminated parental rights.

## DISCUSSION

*Background*

The ICWA establishes minimum federal standards, both procedural and substantive, governing the removal of Indian children from their families. (*In re Alicia S.* (1998) 65 Cal.App.4th 79, 81 [76 Cal.Rptr.2d 121].) An "Indian child" for purposes of the ICWA means "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) The ICWA seeks to protect the interests of Indian children and promotes the stability and security of Indian tribes and families. (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 469 [99 Cal.Rptr.2d 688].)

To ensure a tribe's rights, the ICWA requires: "[i]n any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, *the party* seeking the foster care placement of, or termination of parental rights to, an Indian child *shall notify* the parent or Indian custodian and the *Indian child's tribe*, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a), italics added.)

One of the primary purposes of giving notice to the tribe is to enable it to determine whether the child involved in the proceedings is an Indian child.

(*In re Pedro N.* (1995) 35 Cal.App.4th 183, 186 [41 Cal.Rptr.2d 819].) Thus, the Indian status of the child need not be certain to invoke the notice requirement. (*In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1422 [285 Cal.Rptr. 507].) If the identity or location of the tribe cannot be determined, the notice shall be given to the Secretary of the Interior. (25 U.S.C. § 1912(a).)

*Lack of Notice*

. We agree with appellant that the Department failed to establish it gave notice "by registered mail with return receipt requested, of the pending proceedings and of their right of intervention" (25 U.S.C. § 1912(a)) to the Santa Ynez Band. As a preliminary matter, we reject any claim of waiver given that appellant's challenge is timely (see *In re Pedro N., supra,* 35 Cal.App.4th at p. 191) and the superior court has a sua sponte duty to assure compliance with the notice requirements of the ICWA (*In re Desiree F., supra,* 83 Cal.App.4th at pp. 471-472).

 First and foremost, the forms sent by the Department, that is a "request for confirmation of the children's Indian status and a hearing notice for the [section 366.26] hearing," did not suffice for notice purposes under 25 United States Code section 1912(a). Compliance requires no more than the completion of a preprinted form promulgated by the State of California, Health and Welfare Agency, for the benefit of county welfare agencies (*In re Desiree F., supra,* 83 Cal.App.4th at p. 475) and the attachment of a copy of the dependency petition. The form entitled "NOTICE OF INVOLUNTARY CHILD CUSTODY PROCEEDING INVOLVING AN INDIAN CHILD" and numbered "SOC 319" seeks to conform with the Department of the Interior—Bureau of Indian Affairs Guidelines for State Courts Indian Child Custody Proceedings, 44 Fed.Reg. 67584, 67586 (Nov. 26, 1979) (Guidelines). Although the Guidelines do not have a binding effect on this court, the construction of a statute by the executive department charged with its administration is entitled to great weight. (*In re Desiree F., supra,* 83 Cal.App.4th at p. 474.)

 Guidelines, B.5 states in relevant part:

"The notice shall be written in clear and understandable language and include the following information:

"(i) The name of the Indian child.

"(ii) His or her tribal affiliation.

"(iii) A copy of the petition, complaint or other document by which the proceeding was initiated.

"(iv) The name of the petitioner and the name and address of the petitioner's attorney.

"(v) A statement of the right of the biological parents or Indian custodians and the Indian child's tribe to intervene in the proceeding.

"(vi) A statement that if the parents or Indian custodians are unable to afford counsel, counsel will be appointed to represent them.

"(vii) A statement of the right of the natural parents or Indian custodians and the Indian child's tribe to have, on request, twenty days (or such additional time as may be permitted under state law) to prepare for the proceedings.

"(viii) The location, mailing address and telephone number of the court.

"(ix) A statement of the right of the parent or Indian custodians or the Indian child's tribe to petition the court to transfer the proceeding to the Indian child's tribal court.

"(x) The potential legal consequences of an adjudication on future custodial rights of the parents or Indian custodians.

"(xi) A statement in the notice to the tribe that since child custody proceedings are usually conducted on a confidential basis, that tribal officials should keep confidential the information contained in the notice concerning the particular proceeding and not reveal it to anyone who does not need the information in order to exercise the tribe's right under the Act."

The request for confirmation of the children's Indian status which the Department submitted is another form promulgated by the State of California, Health and Welfare Agency. However, it serves a purpose other than notice. The request for confirmation includes blanks for detailing the dependent child's family history as an aid to a tribe in determining whether the particular dependent child qualifies for Indian child status. The notice of hearing is helpful but again it is not enough for notice under the federal law.

Second, the Department's reliance on certified mail was misplaced. By California Rules of Court, rule 1439(f)(1), the Department could resort to certified mail as an alternative to registered mail. Nevertheless, the Department did not request a return receipt as required under the ICWA (25 U.S.C.

§ 1912(a)) to show that service of notice was completed. The Department and the court must be mindful in this regard that the case cannot proceed to hearing until at least 10 court days after receipt of the notice by the tribe. (25 U.S.C. § 1912(a); Fed. Rules Civ.Proc., rule 6(a), 28 U.S.C.)

Third, even if the Department had completed the appropriate notice form, it should have sent the notice to the tribe's chairperson or its designated agent for service of process. (Cal. Rules of Court, rule 1439(f)(2).) For some undisclosed reason, the Department sent its forms to "San [*sic*] Ynez Tribal Health Clinic." Clearly, it did not send the forms to the tribe's chairperson and there is also no indication in the record that the health clinic was the tribe's designated agent.

For future reference, we note that the Bureau of Indian Affairs (BIA) periodically publishes a current list of designated tribal agents for service of notice, along with the appropriate mailing addresses, in the Federal Register. Notable to this case, the BIA published a list in December 2001, just a few months before the Department attempted to give notice. (66 Fed.Reg. 65725.) In particular, the BIA's list disclosed that the Santa Ynez Band designated "Santa Ynez Band of Mission Indians, ICWA Coordinator" as its agent for service of process. (66 Fed.Reg. 65725, 65738.) Thus, the Department should have served notice to the "Santa Ynez Band of Mission Indians, ICWA Coordinator," and not a health clinic.

We also reject the Department's implicit claim that any error with regard to notice was harmless because it served notice on the BIA. The Department's notice to the BIA suffered from many of the same infirmities as its notice to the Santa Ynez Band and thus did not comply with the ICWA (25 U.S.C. § 1912(a)). We express no opinion as to whether notice to the BIA "by registered mail with return receipt requested, of the pending proceedings and of [a tribe's] right to intervention" could cure error when, as in this case, the tribe's identity and location could be determined.

Unless a tribe has participated in or expressly indicated no interest in the proceedings, the failure to comply with ICWA notice requirements (25 U.S.C. § 1912(a)) constitutes prejudicial error. (*In re Desiree F., supra,* 83 Cal.App.4th at p. 472.) ■ This rule leads us to consider one last issue. The Department assumes the response it received from the enrollment committee chairman establishes the tribe had no interest in these proceedings. We disagree.

At the outset, we note the Department's reference to a response sent by "George Armenta, Enrollment Committee Chairman, San [*sic*] Ynez Band of

Mission of [*sic*] Indians" raises questions about Armenta's authority to speak on behalf of the Santa Ynez Band. He may very well have such authority but there is no showing in the record that he did. In addition, there is the Department's summary of his response, that is: "[H.] and [F.] have no affiliation with the San [*sic*] Ynez Band of Mission Indians. After reviewing all roles [*sic*] and descendency lists, the San [*sic*] Ynez Band of Mission Indians cannot identify the children as enrollment members, or in a line of lineage to the San [*sic*] Ynez Chumash Tribe. Enrollment committee notes were attached to this stating that Roberta A. is Chumash, but her enrollment number is unknown, as is that of the maternal grandmother, Maria R."

We do not know what to make of, or how the juvenile court could make anything of, this summary because it is internally inconsistent. On the one hand, the first statement of "no affiliation" is some evidence that the Tribe has no interest in these proceedings. However, the remaining remarks suggest only that the children are not enrolled members.

While enrollment can be one means of establishing membership, it is not the only means, nor is it determinative. (*United States v. Broncheau* (9th Cir. 1979) 597 F.2d 1260, 1263.) Enrollment is not required in order to be considered a member of a tribe; many tribes do not have written rules. (*In re Desiree F., supra,* 83 Cal.App.4th at p. 471, citing Guidelines, *supra,* 44 Fed.Reg. 67584, 67586.)

In addition, although the Department claimed the tribe could not identify the children in a line of lineage, in the next sentence the Department noted both the children's mother and grandmother were Chumash. The Department's summary simply makes no sense. Even the Department on appeal concedes a lack of clarity. We frankly do not understand why the Department did not attach a copy of the actual response to its report and instead relied on a social worker's summary.

All of the foregoing leads us to one conclusion as well as the reason we publish our decision. Over the years, this court has published repeatedly to emphasize the importance of ICWA notice compliance. Indeed, with one exception, every opinion cited herein comes from this court. Nevertheless, we still encounter deficient records such as the one in this appeal. Therefore, in yet another effort to ensure compliance with the notice requirements of the ICWA, we will set forth our expectation. ■■■ We hold that a party, such as the Department here, who seeks the foster care placement of or termination of parental rights to a child who may be eligible for Indian child status, must do the following or face the strong likelihood of reversal on appeal to this court.

First, the Department must complete and serve, pursuant to the terms of 25 United States Code section 1912(a), the "NOTICE OF INVOLUNTARY CHILD CUSTODY PROCEEDING INVOLVING AN INDIAN CHILD" along with a copy of the dependency petition. Second, the Department must file with the superior court copies of proof of the registered mail or certified mail and the return receipt(s), the completed "NOTICE OF INVOLUNTARY CHILD CUSTODY PROCEEDING INVOLVING AN INDIAN CHILD" that was served, and any responses received.

## DISPOSITION

The orders terminating parental rights are reversed. On remand, the juvenile court is directed to conduct a limited remand restricted to insure whether, one, the Santa Ynez Band received proper notice under the ICWA, and, two, the tribe has determined that the children are eligible for membership in the tribe. Provided proof of proper notice as detailed herein and a determination by the Santa Ynez Band that the children are ineligible for membership in the tribe, the court shall then reinstate its orders terminating parental rights. Alternatively, the court should proceed according to the dictates of the ICWA.

Buckley, J., and Gomes, J., concurred.