Opinion
SILLS, P. J.
Tiffany H. appeals from the termination of her parental rights to Nikki R. The sole issue she raises is the failure by Orange County Social Services Agency to give notice under the Indian Child Welfare Act. We reverse and remand with directions for further proceedings.
Facts
Nikki was taken into protective custody by the Orange County Social Services Agency (SSA) at the age of six months, after her mother called the Child Abuse Registry for help. Nikki is a medically fragile child who has suffered from a gastric reflux condition since birth, resulting in chronic *847 crying, pain, and an inability to keep food down. Although the mother was able to care for Nikki’s two-year-old sister, she was unable to provide Nikki with the proper medical care due to her own medical problems, which include Crohn’s disease, panic disorder, and depression. She had failed to take Nikki to the doctor for recommended tests and had not refilled the child’s prescription for medication designed to manage the condition. Nikki weighed 13 pounds at the time of detention and had not gained any weight for a month. She was placed in the emergency shelter home of Ruth and Ronald D.
At the detention hearing, the juvenile court asked the mother if she or the alleged father had American Indian heritage. The mother replied that she did not, but the father had Cherokee heritage. The juvenile court immediately ordered “the Bureau of Indian Affairs as well as the Cherokee Tribe be noticed of the proceedings.” The father was incarcerated and had been so since Nikki’s birth.
Both parents entered a plea of nolo contendré to the allegations of the petition, and the juvenile court declared Nikki a dependent of the court in June 2001. At the dispositional hearing in July, the court denied reunification services to the father but ordered them provided to the mother. The mother’s case plan required her to participate in counseling, psychiatric care, and programs addressing domestic violence and parenting issues. She was ordered to maintain a stable residence, stay sober, and “obtain resources to meet the needs of your children and to provide a safe home.” The mother was permitted twice weekly unmonitored visits of four hours each.
At the six-month review hearing held in January 2002, SSA reported the mother had not complied with her case plan and had missed most of her visits with Nikki. The juvenile court terminated reunification services and set a permanency planning hearing for May.
By the time of the permanency planning hearing, Nikki was 18 months old and thriving in the D.’s’ home. Her gastric reflux condition was under control due to medication and close monitoring by her pediatrician; she exhibited no developmental delays. At the outset of the hearing, the juvenile court considered the mother’s petition under Welfare and Institutions Code section 388, filed that day, which requested additional reunification services. The court denied a hearing on the petition, finding there had not been a sufficient change of circumstances and no showing that the requested relief would be in the best interest of the child. The court then terminated parental rights and ordered Nikki placed for adoption.
*848 Discussion
The mother’s appeal raises the sole issue of compliance with the notice requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA). Congress enacted ICWA in 1978 to protect Indian children and their tribes from the erosion of tribal ties and cultural heritage and to preserve future Indian generations. (25 U.S.C. § 1902; In re Desiree F. (2000) 83 Cal.App.4th 460, 469 [99 Cal.Rptr.2d 688].) Because “ ‘the tribe has an interest in the child which is distinct from but on a parity with the interest of the parents’ ” (Mississippi Choctaw Indian Band v. Holyfield (1989) 490 U.S. 30, 52 [109 S.Ct. 1597, 1610, 104 L.Ed.2d 29]), a tribe has the right to intervene in a state court dependency proceeding at any time (25 U.S.C. § 1911(c)). This significant right, however, is meaningless unless the tribe is notified of the proceedings. (Dwayne P. v. Superior Court (2002) 103 Cal.App.4th 247, 253 [126 Cal.Rptr.2d 639].) “Notice ensures the tribe will be afforded the opportunity to assert its rights under the [ICWA] irrespective of the position of the parents, Indian custodian or state agencies.” (In re Kahlen W. (1991) 233 Cal.App.3d 1414, 1421 [285 Cal.Rptr. 507].)
The notice provision of ICWA provides, “In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child’s tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary [of the Interior] in like manner, who shall have fifieén days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceedings shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary . . . .” (25 U.S.C. § 1912(a).) If the notice provision is not followed, an Indian child, parent, or the tribe “may petition any court of competent jurisdiction to invalidate such action . . . .” (25 U.S.C. § 1914.)
The determination of a child’s Indian status is up to the tribe; therefore, the juvenile court needs only a suggestion of Indian ancestry to trigger the notice requirement. (In re Antoinette S. (2002) 104 Cal.App.4th 1401, 1408 [129 Cal.Rptr.2d 15]; Dwayne P. v. Superior Court, supra, 103 Cal.App.4th at p. 258; Cal. Rules of Court, rule 1439(d)(2)(A).) Both the court and the county welfare department have an affirmative duty to inquire whether a dependent child is or may be an Indian child. (Cal. Rules of Court, rule 1439(d).)
*849 Preliminarily, we address SSA’s contention that the issue of ICWA notice has been waived because the mother knew or should have known at the jurisdictional and dispositional hearing that ICWA compliance was an issue and failed to appeal from that judgment. SSA’s contention is not correct.
Case law is clear that the issue of ICWA notice is not waived by the parent’s failure to first raise it in the trial court. (In re Jennifer A. (2002) 103 Cal.App.4th 692, 707 [127 Cal.Rptr.2d 54].) And two recent cases have concluded it is not waived by the parent’s failure to appeal the claimed error at the earliest opportunity. (In re Marinna J. (2001) 90 Cal.App.4th 731 [109 Cal.Rptr.2d 267]; Dwayne P. v. Superior Court, supra, 103 Cal.App.4th 247.) In Marinna J., the court reasoned that a parent could not waive the tribe’s right to adequate notice because that would make it “virtually certain” that the tribe could not assert its rights under ICWA. “Under these circumstances, it would be contrary to the terms of the Act to conclude . . . that parental inaction could excuse the failure of the juvenile court to ensure that notice under the Act was provided to the Indian tribe named in the proceeding. [H] • • • Our conclusion is consistent with the protections afforded in the Act to the interests of Indian tribes.” (In re Marinna J., supra, 90 Cal.App.4th at p. 739.)
Dwayne P. reached the same result but based its conclusion on the ICWA provision granting any party the right to petition to invalidate a proceeding if the notice provisions are violated. (25 U.S.C. § 1914.) Plus, the court found the notice issue survived the availability of an earlier appeal because the juvenile court has a sua sponte duty “to give the requisite notice itself or ensure the social services agency’s compliance with the notice requirement. . . . [N]otice is intended to protect the interests of Indian children and tribes despite the parents’ inaction.” (Dwayne P. v. Superior Court, supra, 103 Cal.App.4th at p. 261.) Both cases disagreed with In re Pedro N. (1995) 35 Cal.App.4th 183 [41 Cal.Rptr.2d 819], which held a parent’s failure to timely appeal a notice issue under ICWA waived the issue on a later appeal.
The reasoning of Marinna J. and Dwayne P. persuades us. The notice requirement is designed to protect the interests of the tribe; to the extent a notice defect impairs the tribe’s ability to participate, another party cannot waive it.
We turn now to the mother’s claim that the ICWA notice here was inadequate. The record before the juvenile court contained no evidence that SSA made any effort to elicit information about Nikki’s Indian heritage. Although the court ordered SSA to notify the Bureau of Indian Affairs (BIA) *850 and the Cherokee Nation, SSA did not mention the issue again except to indicate in its reports that the Indian Child Welfare Act did not apply. Where there is reason to believe a dependent child may be an Indian child, defective ICWA notice is “usually prejudicial” (In re Antoinette S., supra, 104 Cal.App.4th at p. 1411), resulting in reversal and remand to the juvenile court so proper notice can be given. (See, e.g., In re Suzanna L. (2002) 104 Cal.App.4th 223 [127 Cal.Rptr.2d 860]; In re H.A. (2002) 103 Cal.App.4th 1206 [128 Cal.Rptr.2d 12]; In re Jeffrey A. (2002) 103 Cal.App.4th 1103 [127 Cal.Rptr.2d 314]; In re Kahlen W., supra, 233 Cal.App.3d 1414; In re Junious M. (1983) 144 Cal.App.3d 786 [193 Cal.Rptr. 40].) Here, however, the issue is complicated by SSA’s attempts to convince us that proper notice was given, even though it is not reflected in the record.
After the mother’s opening brief was filed, SSA filed a motion in this court to take additional evidence consisting of notices it sent to the BIA and the Cherokee Nation on June 1, 2001, shortly before the jurisdictional hearing; the BIA’s response on June 11 that it could not identify any tribe to which the child might belong; and the Cherokee Nation’s response on June 22 that the child was not an Indian child in relation to that tribe. SSA requested we dismiss the appeal as moot based on this evidence. The mother and minor’s counsel opposed the receipt of the additional evidence and the motion to dismiss, correctly pointing out the notices included only minimal information about the child’s background. Additionally, the minor’s counsel filed a petition for writ of supersedeas, seeking to stay the juvenile court’s order to place Nikki for adoption so she could stay in the D.’s’ home pending this appeal. We accepted the additional evidence but deemed it insufficient to render the appeal moot. Accordingly, we denied the motion to dismiss and granted the writ of supersedeas.[1]
Subsequently, SSA filed another motion to take additional evidence, which we decided to resolve in conjunction with the merits of the appeal. This motion proffers evidence of efforts made by the adoptions social worker in September and October 2002 (during the briefing stage of this appeal) to “re-check whether the child is an Indian child,” which is apparently “part of the process for freeing a dependent child for adoption.” This time around, the social worker asked the paternal grandmother about her family’s affiliation with the Cherokee Tribe and was given “the names and birthdates of the family members she thought might have Cherokee ancestry.” The worker transmitted this information to the “Department of Social *851 Services/BIA” in Sacramento, which identified three tribes it was necessary to notify: The Cherokee Nation of Oklahoma, the Cherokee Center for Family Services, and the United Keetoowah Band. All three tribes responded that they could not identify an Indian ancestor for Nikki with the information given and they did not consider her an Indian child within the meaning of ICWA.
We are fortunate to have the benefit of several recent cases involving situations where the social services agency failed to make a record of its efforts to identify and notify the tribes. In In re Samuel P. (2002) 99 Cal.App.4th 1259 [121 Cal.Rptr.2d 820], the detention report identified the mother of the three detained children as primarily American Indian. The social worker sent a “Request for Confirmation of Child’s Status as Indian” to the BIA and to several tribes, only referencing the youngest child, Angel Z. The request indicated the mother’s great-grandfather had been bom on the Santa Ynez reservation of the Chumash Tribe, her grandfather was enrolled in the Chumash Tribe and had received services from Indian agencies, and her sister was a tribal council member and had attended an Indian school. In the report prepared for the jurisdictional and dispositional hearing, the social worker reported she had sent a request for confirmation of “the children as Indian Children” and listed the children’s ICWA eligibility as “unknown.” The case was litigated for the next eight months, resulting in the juvenile court taking jurisdiction over the children and placing them with the maternal grandmother. During that time, no mention was made of the ICWA requirements or the children’s tribal affiliations.
The court found the ICWA notice requirements had been violated. First, the request for confirmation of Angel’s Indian status did not include any information about the dependency proceedings, no court number identifying the proceedings, and no notice informing the tribe of the dates of any hearings. Second, and more relevant to our case, the court found the ICWA notice requirements had been violated because the juvenile court had not fulfilled its independent duty to inquire into the children’s Indian status. Although the social worker reported she had sent a request for confirmation of the status of all three children, she did not file copies of the notices sent or the return receipts received with the juvenile court. The court was unimpressed with the agency’s additional evidence provided on appeal showing that the notices were sent and the return receipts received. “Since these documents were not provided to the juvenile court, the court did not have a sufficient record from which to make a determination whether there had been compliance with the notice provisions of the ICWA, or whether further inquiry was needed.” (In re Samuel P., supra, 99 Cal.App.4th at pp. 1266-1267.)
*852 Samuel P. highlights a critical point: While the petitioning agency may have the duty to provide ICWA notice, it is the role of the juvenile court, not the agency, to determine whether the ICWA notice is proper. (See also In re Jeffrey A., supra, 103 Cal.App.4th at p. 1108; In re Marinna J., supra, 90 Cal.App.4th at p. 739.) This court underscored the point in the recent opinion of In re Jennifer A. (2002) 103 Cal.App.4th 692 [127 Cal.Rptr.2d 54], There, as here, the juvenile court asked about the child’s Indian heritage at the detention hearing, and both parents indicated they might have Indian heritage. SSA reported that it sent the required ICWA notice but failed to file anything to that effect with the juvenile court. No mention of ICWA was made during the rest of the proceedings.
On appeal, the mother raised noncompliance with the ICWA notice requirement. SSA attempted to cure the error by asking this court to accept copies of the notices it sent to and letters it received from the tribes and the BIA. This court rejected SSA’s offer, stating, “[I]t is up to the juvenile court to review the information concerning the notice given, the timing of the notice, and the response of the tribe, so that it may make a determination as to the, applicability of the ICWA, and thereafter comply with all of its provisions, if applicable. . . . [5] . . . The point of the matter is the [juvenile] court must decide, one way or the other, whether the ICWA applies, so it can proceed in compliance therewith when appropriate.” {In re Jennifer A., supra, 103 Cal.App.4th at pp. 705-706 & fn. 5.) The court remanded the case to the juvenile court for a determination as to whether the notice provisions of the ICWA were satisfied. (Id. at p. 709.)
We agree with Jennifer A.’s reasoning. It is a trial court function to receive evidence of SSA’s notice efforts and to determine if they measure up to ICWA standards. In both Jennifer A. and here, SSA responded early in the proceedings to information of possible Indian heritage with efforts that were ineffective. In Jennifer A., the notices omitted the birthplaces of Jennifer and both parents, information that is critical to a tribe’s ability to confirm Indian heritage. (In re Jennifer A., supra, 103 Cal.App.4th at p. 705.) Here, the original notices sent suffered from the same infirmities. Had these efforts been submitted to the juvenile court, it would likely have recognized the deficiencies and directed SSA to make further efforts. “It is for the juvenile court, not DSS or its social workers, to determine whether the Act applies under a given set of circumstances.” (In re Marinna J., supra, 90 Cal.App.4th at p. 739.)
ICWA’s notice provisions open the door to the identification of a dependent child as an Indian child and to the tribe’s right to intervene in the *853 proceedings. Furthermore, if the juvenile court has reason to believe the child is an Indian child, it must conduct the proceedings in accordance with ICWA. It is axiomatic that the earlier these issues are resolved, the better. SSA’s apparent practice of holding onto the evidence of its notice efforts and revealing it only when an issue arises on appeal is unacceptable. “Making the appellate court the trier of fact is not the solution.” (In re Jennifer A., supra, 103 Cal.App.4th at p. 703.)
Two other recent opinions from this court have wrestled with SSA’s evidence of its ICWA notice efforts, presented for the first time on appeal; both relied on the additional evidence to conclude the notice error was harmless, in effect stepping into the shoes of the juvenile court to find notice was sufficient. (In re Antoinette S., supra, 104 Cal.App.4th 1401; In re Christopher I. (2003) 106 Cal.App.4th 533 [131 Cal.Rptr.2d 122].) We find them distinguishable.
In Antoinette S., the father of the child surfaced for the first time two weeks before the hearing at which parental rights were terminated. At the detention hearing, the mother had denied any Indian ancestry on either her part or that of the father. The father told the social worker “he believed his deceased maternal grandparents had Native American ancestry” and provided her with all the information he had about their background. He was unable to identify a possible tribal affiliation. The social worker immediately sent notices to the BIA and the State Department of Social Services (DSS) with all the information she had. The BIA responded that it was unable to identify Indian ancestry without a tribal affiliation, indicating it had received the notice one day before the termination hearing. DSS’s response was similar. SSA introduced copies of the notices and responses for the first time on appeal. (In re Antoinette S., supra, 104 Cal.App.4th at pp. 1405, 1412-1413.)
The Antoinette S. court found that the “father’s suggestion that Antoinette ‘might’ be an Indian child was enough to trigger notice in this case”; it further found the juvenile court had violated 25 United States Code section 1912(a) of ICWA by holding the termination hearing less than 10 days after the BIA received notice. (In re Antoinette S., supra, 104 Cal.App.4th at p. 1408.) But it further found the error was harmless and balked at the suggestion the case should be reversed and remanded for a new hearing after technically proper notice had been given. “The purpose of giving notice is not ritual adherence to the statute but to make it possible for Indian parents, custodians, and tribes to exercise their right of intervention guaranteed by the ICWA. [Citation.] [f ] . . . [N]o tribe could possibly have been identified *854 with the information father provided. And unlike Jennifer A., SSA satisfied its inquiry obligation in this case. Given this scenario, SSA’s failure to provide information the BIA could not utilize is harmless error.” (Id. at p. 1414, fn. 4.)
In re Christopher I. involved an infant dependent of the juvenile court on life support after sustaining injuries inflicted by his father. The child was comatose, dependent on a ventilator to breathe, neurologically devastated, in a persistent vegetative condition, and without cognitive function. The father challenged the juvenile court’s authority to order the removal of Christopher’s life-sustaining medical treatment and, inter alia, the failure to give proper notice of the hearing under ICWA. This court affirmed the juvenile court’s order, relying on additional evidence presented for the first time on appeal to find notice sufficient under ICWA.
Early in the proceedings, the mother claimed she was “part Indian from the Puma Tribe.” SSA searched for such a tribe and notified the BIA, but no such tribe was found. Subsequently, the mother said the correct name of the tribe might be Pima; SSA notified that tribe, which found no Indian heritage for Christopher. Evidence of these efforts was included in the record before the juvenile court, with the exception of the notice from SSA to the Pima Tribe. After the father’s appeal of the order withdrawing life-support, SSA sent additional notices to the BIA and two different Pima Tribes, providing information about the mother and her parents and grandparents and their claimed tribal affiliation. Both tribes responded that Christopher was not eligible for membership. SSA asked this court to take judicial notice of this postappeal evidence.
The Christopher I. court denied the request for judicial notice but took the additional evidence under Code of Civil Procedure section 909 and decided, on its own motion, to augment the record with the information. “The extraordinary circumstances of this case justify augmentation of the record at this time in the interests of justice. ... In our view, the interests of justice require that we augment the record in this case because remand of this matter would be futile and would not be in Christopher’s best interests. To decline to augment the record in this case would only serve to prolong Christopher’s suffering.” (In re Christopher I., supra, 106 Cal.App.4th at p. 563, italics in original.) The court pointed out that more notices to the tribes could not serve the purposes of ICWA because Christopher “will never be able to appreciate his alleged Indian ancestry, nor will he procreate and advance the lineage or culture of any Indian tribe.” (Id. at p. 564.) “An interpretation of the relevant statutes here, as argued by [the father], could *855 do no more than to prolong Christopher’s irreversible suffering. This result would be absurd and would not serve the purposes of ICWA.” (Id. at p. 565.) The court found the augmented record was sufficient for it to determine that either no ICWA notice error existed or any error was harmless. (Id. at p. 567.)
In both Christopher I. and Antoinette S., augmenting the record with the additional evidence prevented a remand that would serve no purpose. In Antoinette S., the father had provided all the information he had and his claimed Indian relatives were dead. Sending the case back to the juvenile court would have required a new hearing, with its attendant delays, with no chance of a different result. In Christopher I., a remand would have been similarly useless. Furthermore, although SSA did not file all its notice documentation with the juvenile court, in both cases it acted promptly and appropriately with the information it had.
Here, however, there are no extraordinary circumstances compelling us to act as the juvenile court and determine whether ICWA notice was adequate based on the proffered additional evidence. First, the additional evidence does not convince us that proper notice was given as a matter of law. We do not know whether more and better avenues of information are open to SSA. Second, if the juvenile court finds the notice sufficient on remand, no new hearing would be necessary and the case can proceed normally.[2] And third, we share the concern of other courts that SSA fully satisfy ICWA’s notice requirements. (See, e.g., In re Antoinette S., supra, 104 Cal.App.4th at p. 1414; In re H.A., supra, 103 Cal.App.4th at p. 1214; In re Desiree F., supra, 83 Cal.App.4th at p. 477.) It is not “acceptable for juvenile courts to completely ignore indications that a child may be of Indian ancestry.” (In re Antoinette S., supra, 104 Cal.App.4th at p. 1420 (dis. opn. of Moore, J.).) Accordingly, we deny the motion to take additional evidence.
Disposition
The judgment terminating parental rights is reversed and the matter is remanded to the juvenile court with directions to conduct further proceedings to determine whether SSA complied with the notice provisions of ICWA. If not, the juvenile court shall direct SSA to comply; if Nikki is determined to be an Indian child, a new hearing shall be held. If notice is found to be sufficient, all previous findings and orders shall be reinstated, *856 subject to the juvenile court’s consideration of any circumstances that may have arisen during this appeal that may affect the outcome.
Rylaarsdam, J., and O’Leary, J., concurred.

SSA filed a second motion to take additional evidence two weeks after our order, proffering a declaration from the social worker regarding the notices previously sent. We denied the motion.

Because we issued a stay, Nikki has been in the same home since detention, where she is thriving, and her appellate counsel informs us the foster parents may adopt her.