Filed 7/11/13  In re J.G. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.G. et al., Persons Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOSE G.,<br><br>Defendant and Appellant. | F066085<br><br>(Super. Ct. Nos. JD128945-00, JD128946-00)<br><br>**OPINION** |

APPEAL from an order of the Superior Court of Kern County. Jon E. Stuebbe, Judge.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Theresa A. Goldner, County Counsel, and Mark L. Nations, Chief Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

Appellant Jose G. (father) seeks reversal of the juvenile court's dispositional order on the grounds the Kern County Department of Human Services (the Department) made insufficient efforts to determine if the children, J.G. and C.G. (collectively the children), had Indian heritage. Father also contends that substantial evidence did not support the juvenile court's decision to deny reunification services to him. We disagree and will affirm the dispositional orders.

## FACTUAL AND PROCEDURAL SUMMARY

Jose G. is the presumed father of C.G., born in 2011, and J.G, born in 2010, although he is not the biological father of J.G. Father was arrested in June 2011 for first degree burglary, which resulted in his second conviction for this offense. After he was incarcerated, father saw the children infrequently through a plexiglass partition at the jail.

After father's incarceration, the children's mother, Rebecca (mother), began using methamphetamine, became involved with a new boyfriend, and left the children with father's relatives. J.G. was placed with Denise G.; C.G. was placed with an aunt. Mother had a history of social services contact and child neglect. She later was arrested on burglary charges.

Between February and June 2012, while in Denise's care, then two-year old J.G. was the victim of vicious, life-threatening physical abuse. When admitted to the hospital, J.G. was diagnosed as suffering from traumatic brain injury, multiple abrasions, burns on his face, neck, back, abdomen, buttocks, and soles of his feet, bone fractures, a fractured jaw and shoulder blade, malnutrition and severe anemia, and possible injury to his spleen. J.G. also tested positive for methamphetamine exposure and was observed to be a "social devastated" child.

On June 27, 2012, petitions pursuant to Welfare and Institutions Code section 300 were filed by the Department on behalf of J.G. and C.G. (All further statutory references are to the Welfare and Institutions Code unless otherwise stated.) The petitions later were amended to identify J.G.'s abusers. Father disclaimed any Indian ancestry and the

2.

juvenile court ruled that the Indian Child Welfare Act (25 U.S.C. § 1901 et seq., ICWA) did not apply to father. Mother reported that she might have Apache ancestry. The Department was ordered to provide notice pursuant to ICWA as to mother.

On July 12, 2012, the Department provided notice of the August 14, 2012, jurisdictional hearing pursuant to ICWA to mother, the Bureau of Indian Affairs (BIA), the Secretary of the Interior, and eight Apache tribes. The notice identified the children by their names and dates of birth, the name, address, and birth date of the children's mother, the name of the children's maternal grandmother, who was deceased, and the name of the children's maternal grandfather. The address given for the grandfather, however, was a former address; the current address was listed as unknown.

Four Apache tribes responded that the children were not members of and were not eligible for membership in an Apache tribe; the BIA indicated it "does not determine tribal eligibility." When the jurisdictional hearing was postponed, the Department again notified the four Apache tribes that previously had not responded. The Department received notification from one of these four tribes that the children were not members of and were not eligible for membership in the tribe.

On September 26, 2012, the Department submitted a declaration from the assigned social worker regarding the notice to the tribes and the lack of any response from some tribes. The Department explained that it had not received any evidence indicating eligibility for enrollment in any tribe after the notices had been served. The Department asked that the juvenile court find that ICWA did not apply.

At the October 4, 2012, jurisdictional hearing, the juvenile court addressed the issue of applicability of ICWA. No one expressed a desire to be heard on the issue, after which the juvenile court determined ICWA did not apply. The juvenile court found that the children came within the provisions of section 300, subdivision (b).

After the juvenile court assumed jurisdiction, instead of proceeding to a dispositional hearing, father, through his counsel, requested that the dispositional hearing

be continued so as to allow more time to respond to the recommendation to deny reunification services to him. Father's counsel also asked that father be provided with visitation while in jail; counsel for the minors did not object to a visit pending disposition. The juvenile court authorized a jail visit as long as father was housed locally; if father was sent to prison, there was to be no visit.

At the November 5, 2012, dispositional hearing, father was elevated to the status of presumed father as to J.G. Father requested reunification services, but the juvenile court denied the request. The juvenile court found that there was clear and convincing evidence the children came within the provisions of section 361.5, subdivision (e)(1). The children were ordered removed from the custody of mother and reunification services were ordered provided to mother for six months, which period would expire on April 4, 2013.

## DISCUSSION

Father claims the notice requirements of ICWA were not satisfied because the notices failed to include all necessary information that was readily available if the Department had interviewed the maternal grandfather. Father also contends the juvenile court erred in denying reunification services because the Department failed to meet its burden under section 361.5, subdivision (e)(1).

## I.      ICWA Notice

We apply a substantial evidence standard of review to father's argument. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430; *In re Aaliyah G.* (2003) 109 Cal.App.4th 939, 941-943.) Applying this standard of review, we reject father's contention.

ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes and families by establishing certain minimum federal standards, distinct from state court standards, in juvenile dependency actions involving an Indian child. (*In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421.) When a state court "knows or has reason to know that an Indian child is involved" in a juvenile dependency

4.

proceeding, a duty to give notice under ICWA arises. (25 U.S.C. § 1912(a); see *Kahlen W.,* at p. 1421.) Under ICWA, an "Indian child" means "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) The Indian status of the child need not be certain in order to trigger notice. (*Kahlen W.,* at p. 1422.) The requisite notice enables the tribe and/or BIA, in part, to investigate and determine whether the minor is an "Indian child." (*In re Junious M.* (1983) 144 Cal.App.3d 786, 796.)

To ensure compliance with ICWA notice requirements, this court held in *In re H.A.* (2002) 103 Cal.App.4th 1206, 1214 (*H.A.*) that a department that seeks the foster care placement of or the termination of parental rights to a child who may be eligible for Indian child status must do the following or face the strong likelihood of reversal on appeal to this court.

"First, the Department must complete and serve, pursuant to the terms of 25 United States Code section 1912(a), the 'NOTICE OF INVOLUNTARY CHILD CUSTODY PROCEEDING INVOLVING AN INDIAN CHILD' [(the SOC 319)] along with a copy of the dependency petition. Second, the Department must file with the superior court copies of proof of the registered mail or certified mail and the return receipt(s), the completed 'NOTICE OF INVOLUNTARY CHILD CUSTODY PROCEEDING INVOLVING AN INDIAN CHILD' that was served, and any responses received." (*H.A., supra*, 103 Cal.App.4th at p. 1215.)

Here, mother claimed Apache ancestry. She identified her parents and her siblings. Although mother claimed to have some contact with the maternal grandfather, the only information obtained from mother when interviewed about the maternal grandfather was an old address. The only address provided by either mother or father for the location of the maternal grandfather was the same address where father and mother

5.

had lived at one point, which was the address set forth on the ICWA notices. By the time of the dependency petition, however, that address no longer was current.

When the dependency petition was filed, father was incarcerated and mother had been living a chaotic lifestyle. J.G. was admitted to the hospital on June 23, 2012, but the Department was unable to locate mother until June 27. When mother was interviewed on July 2, she admitted a recent history of using methamphetamine. She had left both her children with others because she had no job and no money with which to care for the children; she stayed at multiple locations. During the case, the social worker attempted to make contact with relatives of mother, to no avail. There also were multiple occasions when the social worker attempted to contact mother, to no avail.

The Department does have an obligation to make inquiry of the child's family members and obtain information that may assist in establishing or determining Indian ancestry. (§ 224.3, subd. (c).) According to father, the Department should have inquired of the children's maternal grandfather, or presumably other relatives, for additional family history, such as the birthplaces and/or birth dates for those listed on the request for confirmation form whose birthplaces and/or birth dates were noted as unknown.

We reject this argument because it is based on speculation and unsupported by the record. (*Calhoun v. Hildebrandt* (1964) 230 Cal.App.2d 70, 72 [it is appellant's burden to show affirmatively error on the record].) Further, while the Department had a duty to make inquiry and act on information it received, it did not have a duty to conduct an exhaustive search. (*In re C.Y.* (2012) 208 Cal.App.4th 34, 41.) That the record is silent regarding whether the Department spoke with or attempted to contact the maternal grandfather does not necessarily mean the Department failed to make an adequate inquiry for Indian heritage information. (*In re D.W.* (2011) 193 Cal.App.4th 413, 417.) The record does show extensive attempts to track the maternal aunt. Father also assumes without any basis in the record that the maternal grandfather or other older maternal

6.

relatives were available to be interviewed and could have supplied the missing birthplaces and birth dates for the request for confirmation form.

We conclude the Department made an adequate inquiry. We base this on the following: (1) Mother was only "semi-cooperative" with the Department throughout the case; (2) she was unable to provide any current or accurate information regarding any of her immediate family members; (3) the record evidence of exhaustive attempts to locate the maternal aunt to no avail; (4) a silent record as to attempts made to locate other family members; and (5) nothing in the record to suggest the Department had a means of contacting any other family members, or other more current information for the two family members that it allegedly failed to follow through on.

The Department, using what information was available to it, gave notice to every possible Apache tribe and the BIA. Notice was sent by registered or certified mail with return receipt requested and all return receipts were filed with the juvenile court in advance of the hearings. (§ 224.2, subds. (a)(1), (c).) Consequently, the record reflects the ICWA notice requirements were satisfied. (*H.A., supra,* 103 Cal.App.4th at p. 1211.)

## II. Denial of Reunification Services

Father contends the denial of reunification services pursuant to section 361.5, subdivision (e)(1) was not supported by the evidence because the Department failed to meet its burden of proving detriment.

Section 361.5, subdivision (e)(1) states in relevant part:

"(1) If the parent or guardian is incarcerated, institutionalized … the court shall order reasonable services unless the court determines, by clear and convincing evidence, those services would be detrimental to the child. In determining detriment, the court shall consider the age of the child, the degree of parent-child bonding, the length of the sentence, the length and nature of the treatment, the nature of the crime or illness, the degree of detriment to the child if services are not offered .… Reunification services are

7.

subject to the applicable time limitations imposed in subdivision (a). Services may include, but shall not be limited to, all of the following:

"(A) Maintaining contact between the parent and child through collect telephone calls.

"(B) Transportation services, where appropriate.

"(C) Visitation services, where appropriate.

"(D) Reasonable services to extended family members or foster parents providing care for the child if the services are not detrimental to the child.

"An incarcerated or detained parent may be required to attend counseling, parenting classes, or vocational training programs as part of the reunification service plan if actual access to these services is provided."

The clear and convincing evidence standard specified in section 361.5 is for the edification and guidance of the juvenile court and not a standard for appellate review. The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial juvenile court to determine. If there is substantial evidence to support its conclusion, the determination is not open to review on appeal. On appeal from a judgment required to be based upon clear and convincing evidence, the clear and convincing test disappears and the usual rule of conflicting evidence applies. On review of the sufficiency of the evidence, we presume in favor of the order, considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference, and resolving all conflicts in support of the order. The usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and disregarding the appellant's evidence, however strong. (*Sheila S. v. Superior Court* (2000) 84 Cal.App. 4th 872, 880-881; *In re Brian M*. (2000) 82 Cal.App.4th 1398, 1401.)

As noted above, in determining detriment when a parent is incarcerated, the juvenile court shall consider the age of the child, the degree of parent-child bonding, the

length of the sentence, the nature of the treatment, the nature of the crime or illness, and the degree of detriment to the child if services are not offered. (§ 361.5, subd. (e)(1).) Here, both children were under three years of age. Reunification services would be provided, if at all, for six months but no more than 12 months. (*Id.*, subd. (a)(1)(B).)

J.G. was slightly over one year old when father was arrested and incarcerated; C.G. was a few months old. Father saw the children only sporadically, and then through glass, after his incarceration. When asked to describe his interaction with the children when he was not incarcerated and around them, all father could offer was "Spend quality time as a father with his kids." The only specific that father could offer to show any bond between J.G. and him was to state that J.G. would "Always follow me around all the time and his mother."

As of the dispositional hearing, father had been sentenced on a "[t]wo strikes" offense to a term of five years; his current offense was burglary. Father had served a portion of that time, but speculated he might be released in 18 months. He expected to be housed at Wasco for eight more months before he was transferred elsewhere in the state. He wanted to visit with the children through the glass partition at Wasco.

No evidence was offered at the dispositional hearing of detriment to the children if reunification was not offered to father. But, counsel for the children argued there would be detriment to the children if services were to be offered because the children would be attempting to establish a relationship through a glass partition with someone they could not possibly reunify with before the expiration of the reunification period. Such a circumstance, counsel opined, would raise false hope in the children during the reunification period. The Department recommended that no reunification services be offered to father as it opined it would be detrimental to the children.

There is little to no evidence of any bond between father and the children. They were both quite young when father was incarcerated. Assuming arguendo that father would be released in 18 months from the dispositional hearing, that release date would be

six months after the maximum time period that reunification services could be provided. The reunification services time limits are applicable to incarcerated parents. (§ 361.5, subd. (e)(1).) As counsel for the minors pointed out at the dispositional hearing, father would have to serve 80 percent of his time, and it was not possible for him to be released before the reunification period expired. We point out that father, by choosing to engage in criminal conduct, placed himself in a situation where he has been unable to establish and sustain a relationship with his children and where he cannot be released before the reunification period expires.

"Section 361.5, subdivision (e)(1) does not require that each listed factor exist in any particular case, nor does it specify how much weight is to be given to a factor bearing on detriment, listed or not." (*Edgar O. v. Superior Court* (2000) 84 Cal.App.4th 13, 18.) The dispositional order denying father reunification services was supported by substantial evidence and reversal is not required.

**DISPOSITION**

The orders are affirmed.

_____
CORNELL, Acting P.J.

WE CONCUR:


_____
GOMES, J.


_____
FRANSON, J.

10.