Filed 2/18/14  In re T.P. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re T.P. et al., Persons Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, Plaintiff and Respondent, v. L.M., Defendant and Appellant. | F067644 (Super. Ct. Nos. 516563, 516564, 516565) **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Nan Cohan Jacobs, Judge.

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant.

John P. Doering, County Counsel, Carrie M. Stephens, Deputy County Counsel for Plaintiff and Respondent.

-ooOoo-

Three children of appellant L.M. (mother) were detained and subsequently found to be dependents of the juvenile court pursuant to Welfare and Institutions Code

section 300, subdivisions (b) and (j).  Mother informed the juvenile court and the Stanislaus County Community Services Agency (the agency) that she may have Cherokee ancestry.  In this appeal, mother argues that we should reverse and remand to the juvenile court because the record does not contain sufficient affirmative evidence of the agency's efforts to collect genealogical information about the children pursuant to the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; Welf. & Inst. Code, § 224 et seq.) (ICWA).[1]

We affirm.  Mother cites no authority for the view that the agency is required to present evidence of its diligence in attempting to collect information about the children's parents, grandparents, and great-grandparents before informing the juvenile court that the information is unknown.  In the absence of any such requirement, we must adhere to the basic appellate principle that reversal is appropriate only when the record affirmatively shows error.  None has been shown.

## FACTS AND PROCEDURAL HISTORY

Mother took her then four-year-old son T.P. to a hospital on January 28, 2013.  She reported that he had been exhibiting manic behavior, which included threatening to kill himself as he held a knife to his throat.  Hospital staff observed bruises in many places on T.P.'s body.  While a social worker was speaking with mother, mother became upset and began yelling.  T.P. was detained for the night pursuant to section 5150 and mother was escorted out of the hospital by security personnel.  A social worker who subsequently investigated received reports that T.P. was being physically abused by L.Q., who is the father of T.P.'s siblings, U.Q. and D.Q.  T.P.'s father is J.M.

On January 31, 2013, the agency filed a petition alleging that T.P., U.Q., and D.Q. were children subject to the jurisdiction of the juvenile court pursuant to section 300.  The children were placed in foster homes.  On June 20, 2013, the court made jurisdictional

---

[1]Subsequent statutory references are to the Welfare and Institutions Code unless otherwise noted.

findings pursuant to a settlement reached by the parties. Under the settlement, the court sustained the petition under section 300, subdivisions (b) and (j). The court made dispositional orders at the same hearing. The children were to continue in out-of-home placements. Mother and L.Q. were found to have made fair progress toward mitigating the conditions that caused the children's removal. They were to receive reunification services. J.M. was found to have made no progress toward mitigating the conditions that caused the children's' removal. He was denied reunification services.

The sole issue in this appeal concerns ICWA compliance. On February 1, 2013, mother and L.Q. filed Parental Notification of Indian Status forms (Judicial Council Forms, form ICWA-020). Mother stated that she might have Cherokee ancestry. L.Q. denied knowledge of any Indian ancestry. There is no similar form in the record for J.M., but he told the court he had no Native American ancestry at a hearing on March 5, 2013. He said the same to a social worker during a telephone interview on February 27, 2013.

The agency prepared Notice of Child Custody Proceeding for Indian Child forms (Judicial Council Forms, form ICWA-030) for the children and filed them in the juvenile court on February 22, 2013. The forms had spaces for the names, addresses, dates and places of birth, and tribal information for the children's parents, grandparents, and great-grandparents. The agency provided the name and address of mother, the name of mother's deceased mother, the name and address of mother's father, and the name of one of mother's grandmothers. It also provided the name of J.M., the name and address of L.Q., the name and address of L.Q.'s mother, the name of L.Q.'s deceased grandmother, and the name and address of one of L.Q.'s grandfathers. The agency reported that all the remaining information for the parents' parents and grandparents was unknown. The agency sent the notices to the Bureau of Indian Affairs, the Department of the Interior, the Eastern Band of Cherokee, the United Keetoowah Band of Cherokee, and the Cherokee Nation of Oklahoma.

At the jurisdictional/dispositional hearing, the agency informed the court that it had received some responses to the notices, but none indicating that the children had Indian ancestry. The court found that, 60 days having passed since notice was served and no responses indicating Indian ancestry having been received, the agency had complied with ICWA and no further ICWA requirements applied.

### *DISCUSSION*

When a section 300 petition has been filed and a child is at risk of entering foster care, ICWA requires juvenile courts and child welfare agencies to inquire whether the child is an Indian child and to notify tribes of which the child may be a member. (§ 224.3, subds. (a), (d).) If the court or agency "knows or has reason to know that an Indian child is involved," the agency is required to make further inquiry "by interviewing the parents, Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) of Section 224.2, contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member or eligible for membership in and contacting the tribes and any other person that reasonably can be expected to have information regarding the child's membership status or eligibility." (§ 224.3, subd. (c).) Section 224.2, subdivision (a)(5), requires notice to tribes to include, among other things, the names, current and former addresses, places and dates of birth, and tribal statuses of the child's parents, grandparents, and great-grandparents "if known."

Mother maintains that, because the agency reported as unknown much of the information listed in section 224.2, subdivision (a)(5), regarding the children's grandparents and great-grandparents, the agency must have failed to make a sufficiently diligent inquiry about that information. She says the case must be remanded to the juvenile court and the agency must be required to establish that it has done more to find information about mother's parents and grandparents. Further, the agency should be

4.

compelled to inquire further about J.M.'s possible Indian ancestry, even though he denied he had any, because he was living at an address in Plummer, Idaho, which mother says is on an Indian reservation.  Mother asserts that "there is nothing in this record to establish that [the agency's] social workers asked [mother] the relevant questions" about her relatives and that "in the absence of any statements by" the social workers about their efforts, "one must presume that they made no attempts to find out" additional information.  She also asks us to use this case as an opportunity to introduce procedural innovations that could prompt agencies to make more thorough investigations into potential Indian children's family histories:  She would have us impose a burden of proof on the agency "to show that it did employ reasonable efforts" to obtain the missing information; she would have us require a particular manner of carrying that burden, namely, the submission by a social worker of a declaration—or an oral statement in open court—detailing the efforts made; and she would have us create an obligation on the part of trial counsel for children and parents to scrutinize the ICWA notice forms and bring any omissions to the attention of the trial court.  In sum, mother maintains that reversal is required because the agency has not proved that it diligently investigated the children's grandparents and great-grandparents before listing information about them as unknown on the notice forms.

Her argument is misplaced.  A basic review of appellate practice would include the principle that a trial court's judgment is presumed correct, and the burden is on the appellant to show affirmatively that an error was committed.  (*Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 712.)  By mother's own admission, the record does not contain anything that reveals the degree of diligence employed by the agency in making inquiry about the children's grandparents and great-grandparents.  It includes only the agency's representation that much of that information was unknown.  We cannot presume from this that the agency failed in its duty to make reasonable inquiries.

There is no authority for the notion that the usual presumption of the correctness of the proceedings below does not apply to the degree of an agency's diligence in inquiring into a child's Indian family background.  Courts of Appeal sometimes speak of an agency's failure to show compliance, but they do so only in the context of a failure to document any provision of notice at all, not a failure to prove that they tried hard enough to uncover facts about the child's grandparents and great-grandparents.  (See, e.g., *In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421-1422.)  Since mother has not shown error based on the record, we must affirm.

It may or may not be the case, as mother avers, that the imposition of the procedural innovations she recommends would improve ICWA compliance and reduce the number of appeals raising ICWA issues.  But it is clear there is no authority on the basis of which we could mandate those procedures.

Mother cites almost a dozen cases on compliance with ICWA inquiry and notice obligations, but not one of them supports her position.  All of them deal with a failure to give notice to tribes or the giving of defective notice.  (*In re Justin S.* (2007) 150 Cal.App.4th 1426, 1437 [remanding because juvenile court declared that ICWA did not apply based on tribes' failure to respond, even though 60-day period for response had not elapsed]; *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 251-252 [agency did not provide tribes with any ICWA notice]; *In re Marinna J.* (2001) 90 Cal.App.4th 731, 734 [record reflected no ICWA notice or inquiry at all]; *In re Kahlen W., supra,* 233 Cal.App.3d at pp. 1421-1424 [agency failed to provide tribe with notice of its right to intervene and failed to follow alternative procedure for notice to Bureau of Indian Affairs]; *In re Suzanna L.* (2002) 104 Cal.App.4th 223, 226 [mother, in proceeding to terminate parental rights of father, failed to provide any notice to tribe]; *In re Jonathan D.* (2001) 92 Cal.App.4th 105, 109 [notice to tribes failed to comply with law because it was given fewer than 10 days before hearing to terminate parental rights]; *In re Desiree F.* (2000) 83 Cal.App.4th 460, 464-466, 470 [agency failed to provide tribe with any notice

of proceedings; it could not satisfy its duty of inquiry by relying on letter predating minor's birth and denying tribal membership of minor's half-siblings]; *In re Samuel P.* (2002) 99 Cal.App.4th 1259, 1266 [no notice to tribe for two children; notice for third child contained no information about court's proceedings and failed to relay information in agency's possession about tribal affiliations of relatives]; *In re H.A.* (2002) 103 Cal.App.4th 1206, 1211-1215 [notices provided to tribe did not use proper forms, did not include request for return receipt, and were not properly addressed; court expresses expectation that in future, agencies will serve notice using proper forms and will file documentation of mailing and responses received]; *In re Louis S.* (2004) 117 Cal.App.4th 622, 628 [notice regarding child's possible Apache heritage did not go to all Apache tribes; contained misspelled names and other errors; omitted information known to agency; was sent to wrong addresses; and was not filed with juvenile court]; *In re S.E.* (2013) 217 Cal.App.4th 610, 615-616 [notice omitted information known to agency about possible tribal affiliations of child's father and great-great-grandfather].)  None of these cases support the view that an agency must prove that its lack of knowledge of genealogical information was not caused by its lack of diligence.

## *DISPOSITION*

The juvenile court's orders are affirmed.


_____
Hoff, J.[*]

WE CONCUR:


_____
Cornell, Acting P.J.


_____
Detjen, J.

_____

[*]Judge of the Superior Court of Fresno County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.