Filed 6/30/21  In re M.C. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re M.C., a Person Coming Under the Juvenile Court Law. | H048615 (Santa Clara County Super. Ct. No. JD023224) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, Plaintiff and Respondent, v. K.D., Defendant and Appellant. | |

On May 1, 2015, the Santa Clara County Department of Family and Children's Services (Department) filed a petition (first petition) under Welfare and Institutions Code section 300, subdivisions (b) and (g)[1] relative to a six-month-old boy, M.C. (the minor). K.D. (mother) and M.C. (father) are the minor's parents.  (Mother and father are hereafter collectively referred to as the parents.)  The juvenile court declared the minor a dependent child in August 2015 with custody to mother with family maintenance

---

[1] Further statutory references are to the Welfare and Institutions Code unless otherwise stated.

services.  It later terminated the dependency and ordered physical and legal custody to mother.

The Department filed on April 13, 2018, a new petition (second petition) under section 300, subdivision (b)(1) to declare the minor a dependent child.  In July 2018, the minor was declared a dependent child, and on March 19, 2019, after conducting a selection and implementation hearing pursuant to section 366.26 (366.26 hearing), the juvenile court found by clear and convincing evidence that the minor was adoptable, identified the permanent plan as adoption, and terminated the parental rights of mother and father.

The parents challenged the March 19, 2019 order on appeal.  On September 24, 2019, this court reversed.  (See *In re M.C.* (Sept. 24, 2019, H046923) [2019 Cal.App. Unpub. LEXIS 6375]) (*In re M.C.*).)  We remanded the case to the juvenile court with directions to comply with the inquiry and notice provisions of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; hereafter the ICWA) and of Welfare and Institutions Code sections 224.2 and 224.3.  In our disposition, we recited that upon remand, if the relevant tribes, after receiving proper notice, did not respond or responded that the minor was not an Indian child within the meaning of the ICWA, the juvenile court was required to immediately reinstate the order terminating parental rights and to conduct further proceedings, as appropriate.  (*In re M.C.*, *supra*, H046923, at pp. *15-16.)

Shortly before this court filed its decision in *In re M.C., supra*, H046923, the minor's custodian, the maternal grandmother, advised that she no longer wished to adopt the minor; instead, she wished to become his legal guardian.  Accordingly, after the case was remanded, the Department ultimately scheduled a new 366.26 hearing with a proposed permanent plan of legal guardianship.  On September 14, 2020, the juvenile court conducted a combined hearing to determine compliance with the ICWA and to conduct a new selection and implementation hearing under section 366.26.  The court, without objection by mother, found that the Department had complied with the notice

provisions of the ICWA and that the ICWA did not apply, determined that legal guardianship as the permanent plan was in the minor's best interests, and reinstated its prior order terminating parental rights.

Mother filed an appeal from the September 14, 2020 order.[2]  She contends that, because of the changed circumstances (i.e., the custodian choosing legal guardianship instead of adoption), the limited remand in the prior appeal requiring reinstatement of the order terminating parental rights, conditioned upon compliance with ICWA notice provisions and a determination that the ICWA did not apply, was improper and should be revisited and reversed.

We will affirm the order after the September 14, 2020 selection and implementation hearing under section 366.26.

## I.    FACTS AND PROCEDURAL HISTORY[3]

### A.    First Petition Proceedings

On May 1, 2015, the Department filed a petition on behalf of the minor under subdivisions (b) and (g) of section 300.  The Department alleged, inter alia, that (1) there was a substantial risk of physical harm to the minor as a result of parents' selling methamphetamine in the minor's presence; (2) mother had been involved in previous child welfare proceedings (i.e., eight prior referrals), had participated unsuccessfully in

---

[2] Father did not challenge the September 14, 2020 order and thus is not part of this appeal.

[3] The background facts and procedure of this case that predate the parents' appeal of the court's March 19, 2019 order after the 366.26 hearing are taken from our prior opinion in *In re M.C.*, *supra*, H046923.  We take judicial notice of the record, briefs, and the opinion in the prior appeal.  (Evid. Code, §§ 452, subd. (d), 459, subd. (a).); see *Flatley v. Mauro* (2006) 39 Cal.4th 299, 306, fn. 2 [judicial notice of court materials appropriate to "help complete the context of this case"]; *ZF Micro Devices, Inc. v. TAT Capital Partners, Ltd.* (2016) 5 Cal.App.5th 69, 73, fn. 3 [appellate court takes judicial notice of procedural matters and background facts contained in related unpublished opinion].)

reunification services for two of the children, and had ultimately lost custody of three older children; (3) father had four older children of whom he was not the custodial parent, had been involved in prior child welfare proceedings (i.e., nine prior referrals), and had participated unsuccessfully in reunification services; (4) father had prior criminal convictions related to the possession and possession for sale of controlled substances, child endangerment, and infliction of corporal injury upon a spouse or cohabitant; and (5) there was no one available to care for the minor upon parents' arrest.

After declaring the minor a dependent child and ordering that mother have custody with family maintenance services on August 14, 2015, the juvenile court, on April 25, 2016, terminated the dependency. It ordered physical and legal custody to mother with father receiving supervised visitation.

### B. Second Petition Proceedings

On April 13, 2018, the Department filed the second petition under section 300, subdivision (b)(1) to declare the minor a dependent child. The Department alleged that the minor was at substantial risk of physical harm due to mother's having been arrested on April 11, 2018, for felony child abuse, felony assault with a deadly weapon, misdemeanor possession of a controlled substance, misdemeanor possession of drug paraphernalia, and felony bringing drugs into a jail. The Department alleged further that the minor was living with mother in her vehicle under dangerous and unsanitary conditions consisting of, inter alia, the presence of methamphetamine and knives in the car, mother's housing the minor on occasion in the car's trunk, and mother's leaving the minor alone in the car.

In May 2018, the minor was placed in the care of the maternal grandmother, who was also caring for the minor's older brother.

On July 18, 2018, after a contested jurisdiction and disposition hearing, the juvenile court sustained the second petition, as amended, declared the minor a dependent child, removed him from mother's custody and found that placement with father would

4

be detrimental to the child. The court denied reunification services to both parents and set a 366.26 hearing.

On March 19, 2019, the juvenile court conducted a 366.26 hearing, which parents submitted on the Department's report. The court found in its order by clear and convincing evidence that the minor was adoptable, and it terminated the parental rights of mother and father. The juvenile court further designated the minor's caregiver, the maternal grandmother, as the prospective adoptive parent.

## C.     First Appeal of March 2019 Order After 366.26 Hearing

Mother and father filed separate appeals from the order after the 366.26 hearing. They contended that the Department and the juvenile court did not comply with the ICWA's notice and inquiry requirements, and that this error required conditional reversal of the order. Neither mother nor father raised any challenges to the order aside from noncompliance with the ICWA. The Department conceded error and agreed that conditional reversal to give adequate notice was appropriate.

In an opinion filed September 24, 2019, this court held that there had been a lack of compliance with the notice and inquiry requirements of the ICWA and that this noncompliance with the ICWA was not harmless error. (*In re M.C.*, *supra*, H046923, at pp. 15-16.) We therefore conditionally reversed the 366.26 order and remanded the case to the juvenile court with directions to comply with the inquiry and notice provisions of the ICWA. (*Ibid.*) In our disposition, we stated: "If, after receiving notice as required by those statutes, the relevant tribes do not respond or respond that the minor is not an Indian child within the meaning of the Indian Child Welfare Act, the order terminating parental rights shall immediately be reinstated and further proceedings shall be conducted, as appropriate. If any tribe determines that the minor is an Indian child, the juvenile court shall proceed accordingly." (*Ibid.*)

### D. Further Proceedings

On August 19, 2019 (while the parents' appeal of the order after the 366.26 hearing was pending), the maternal grandmother advised the Department that she no longer wished to adopt the minor; instead she wished to serve as his legal guardian.[4] The Department advised the juvenile court of this change in a report dated August 28, 2019. This development led to the scheduling of a new 366.26 hearing for December 13, 2019, under which the Department changed its permanent plan recommendation from adoption to legal guardianship. On December 6, 2019, this court issued a remittitur in *In re M.C.*, *supra*, H046923, which resulted in the juvenile court vacating the 366.26 hearing. The record reflects that there were four subsequent hearings in which the progress of the Department's compliance with the ICWA's notice provisions was addressed.[5]

On September 14, 2020, the juvenile court conducted a hearing on remittitur (concerning compliance with the ICWA) and a further selection and implementation hearing under section 366.26. Mother was not present at this combined hearing but was represented by counsel. Mother's counsel offered no comment concerning the Department's position that (1) it had complied with the notice requirements of the ICWA, (2) there had been uniform response that the minor was not enrolled in or eligible for enrollment in an Indian tribe, and (3) therefore the ICWA did not apply. The court so found that the Department had complied with the ICWA's notice requirements and that the ICWA did not apply.

---

[4] The maternal grandmother explained to the Department that legal guardianship had worked well in her relationship as the custodian of the minor's older brother. Additionally, she felt that adoption of the minor would result in her loss of benefits, and in light of her age, legal guardianship would be in the minor's best interest.

[5] Mother did not attend any of these four hearings.

At the September 14, 2020 366.26 hearing, the Department reiterated its recommendation, referencing its reports, that legal guardianship be approved as the permanent plan for the minor. Mother's counsel stated that she did not know her client's position regarding the matters presented at the 366.26 hearing, and counsel thus stated that she had "no comment today" about them.[6] The court, in connection with the selection and implementation hearing, adopted the recommendation of the Department that, given that the maternal grandmother was capable of and willing to care for the minor and provide a stable living environment for him, legal guardianship as the permanent plan was in the best interest of the minor. The juvenile court, referencing the remand instructions of this court in *In re M.C.*, *supra*, H046923, reinstated its prior order of March 19, 2019 terminating parental rights. And the court ordered that there be no physical contact or communication of any kind between the parents and the minor, finding that any such contact or communication would be detrimental to the minor's physical and/or emotional well-being.

Mother filed a timely notice of appeal from the September 14, 2020 order, identifying the order by date and specifying that her appeal was from the "[r]einstatement of termination of parental rights and establishing a legal guardianship; proper notice under ICWA."

## II. DISCUSSION

### A. Standard of Review

Both mother and the Department argue that this appeal is subject to a de novo standard of review. When the relevant facts are undisputed and the issue is one of law,

---

[6] Father did not appear at the 366.26 hearing, but he was represented by counsel. His counsel stated that he had had no contact with father. Counsel stated further that he had no comment concerning the ICWA compliance issues or the recommendations of the Department concerning approval of legal guardianship for the minor.

the decision of the trial court is subject to independent review. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 (*Ghirardo*).)

As discussed, *post*, the principal issues we address are (1) the propriety of a limited remand where the appellate challenge after a 366.26 hearing in which parental rights are terminated concerns compliance with the ICWA, (2) whether mother's challenge to the limited remand disposition in the prior appeal in *In re M.C., supra*, H046923, is precluded under the doctrine of law of the case, and (3) whether mother has forfeited her appellate challenge by failing to preserve it below. (Cf. *Lynch v. California Coastal Com.* (2017) 3 Cal.5th 470, 476 ["determination whether a party's actions constitute forfeiture is essentially legal in nature, and thus subject to independent review"].) These are issues of law based upon undisputed facts; they are, accordingly, subject to independent review. (*Ghirardo*, *supra*, 8 Cal.4th at p. 799.)

## B. Jurisdictional Challenge

The Department challenges our jurisdiction to consider this appeal. Mother's notice of appeal referenced the September 14, 2020 order (1) reinstating termination of parental rights, (2) establishing legal guardianship as the permanent plan, and (3) finding that there had been compliance with notice requirements under the ICWA. The Department contends that the issues presented herein are beyond the scope of the notice of appeal, and that therefore mother's appeal cannot be considered. The Department urges that mother challenges the limited remand contained in our opinion in *In re M.C.*, *supra*, H046923, and, conversely, she does not challenge the September 14, 2020 order itself. We address this threshold issue before considering the merits of mother's appeal. (See *Porter v. United Services Automobile Ass'n* (2001) 90 Cal.App.4th 837, 838 [appellate court has duty to examine on its own motion issues concerning its jurisdiction].)

A notice of appeal "must be liberally construed." (Cal. Rules of Court, rule 8.100(a)(2).)[7] As the California Supreme Court has recently explained, "Rule 8.100(a)(2)'s liberal construction requirement reflects the long-standing ' "law of this state that notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." ' [Citations.] The rule is intended to 'implement the strong public policy favoring the hearing of appeals on the merits.' [Citations.]" (*K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 882 (*K.J.*).)

We construe mother's notice of appeal here as a challenge to the juvenile court's adherence to the limited remand order in *In re M.C.*, *supra*, H046923, by reinstating the court's prior order terminating parental rights. That reinstatement occurred as part of the juvenile court's September 14, 2020 order that is specifically referenced in the notice of appeal. We do not see how respondent would have been misled or prejudiced by the notice of appeal (see *Luz v. Lopes* (1960) 55 Cal.2d 54, 59-60), and the Department does not argue the point in its respondent's brief. We liberally construe mother's notice of appeal to protect her right to appeal, and we therefore reject the Department's jurisdictional challenge. (Rule 8.100(a)(2); *K.J.*, *supra*, 8 Cal.5th at p. 882.)[8]

C.     **Challenge to Reinstatement of Termination of Parental Rights**

On appeal, mother challenges the trial court's September 14, 2020 order to the extent that it reinstated the prior order terminating parental rights. She contends that the

---

[7] All unspecified rule references are to the California Rules of Court.

[8] We reject the Department's jurisdictional challenge based upon its contention that mother's appellate challenge falls outside the scope of the appeal notice's description of the matter from which an appeal is taken. This jurisdictional issue is separate and apart from whether mother's challenge targeting the limited remand in our disposition in *In re M.C.*, *supra*, H046923, is barred under the doctrine of law of the case, an issue we address, *post*.

limited reversal of the original order after the 366.26 hearing of March 2019 that we issued in *In re M.C.*, *supra*, H046923, "prevented [the] juvenile court from exercising its authority to reinstate parental rights after new facts impacting the welfare and best interests of the child evolved" after the selection of adoption as the permanent plan, the appeal and disposition thereof in *In re M.C.*, *supra*, H046923, and the ultimate selection of legal guardianship by the juvenile court after remand. Mother argues that "[t]he entry of the limited reversal and order to reinstate the termination of parental rights if the juvenile court found compliance with the notice provisions of the ICWA *must be reconsidered and reversed*." (Italics added.)

For the reasons we explain below, mother's challenge to this court's disposition in the prior appeal in *In re M.C.*, H046923, is not cognizable and therefore must be rejected.

### 1. *Limited Remand Disposition Was Proper*

As a foundational matter, we address, in the disposition of an appeal from an order after a 366.26 hearing that is focused solely upon ICWA compliance, the propriety of a limited reversal permitting the juvenile court and the agency to cure the noncompliance, and if the ICWA is determined inapplicable, to reinstate the prior order terminating parental rights. One of the most oft-cited cases on the question is *In re Francisco W.* (2006) 139 Cal.App.4th 695 (*Francisco W.*).

In *Francisco W.*, *supra*, 139 Cal.App.4th at page 699, the parent and the dependent child asked the appellate court to reexamine whether it should adhere to this practice of granting a limited remand, or, alternatively should "allow[] the juvenile court to revisit dependency issues outside of [the] ICWA." The *Francisco W.* court, quoting the California Supreme Court, noted that " '[i]t is a firmly established principle of law that "[t]he appellate courts have power to order a retrial on a limited issue, if that issue can be separately tried without such confusion or uncertainty as would amount to be a denial of a fair trial." [Citation.] The underlying rationale is easy to discern: [t]o require a complete retrial when an issue could be separately tried without prejudice to the

10

litigants would unnecessarily add to the burden of already overcrowded court calendars and could be unduly harsh on the parties.' " (*Id.* at p. 704, quoting *Torres v. Automobile Club of So. California* (1997) 15 Cal.4th 771, 776.) The court in *Francisco W.* held that "[t]he limited reversal approach is well adapted to dependency cases involving termination of parental rights in which we find the only error is defective ICWA notice. This approach allows the juvenile court to regain jurisdiction over the dependent child and determine the one remaining issue. The parties already have litigated all other issues at the section 366.26 hearing, and it is not necessary to have a complete retrial." (*Francisco W., supra*, at p. 705.) The court held further that the limited remand procedure was also "in keeping with the public policy of our child dependency scheme, which favors prompt resolution of cases. [Citation.]" (*Id.* at p. 706.) And it found that the procedure was "in accordance with established principles of appellate practice, which focus on the evidence before the trial court and do not consider postjudgment events." (*Ibid.*)

"[L]imited reversal and remand is common practice in cases involving failure to comply with the ICWA notice requirements." (*Tina L. v. Superior Court* (2008) 163 Cal.App.4th 262, 267.) This limited remand procedure for appeals from 366.26 orders that involve only ICWA compliance challenges is generally followed by the District Courts of Appeal in California. (See, e.g., *In re A.W.* (2019) 38 Cal.App.5th 655, 667 [3rd Dist.]; *In re K.R.* (2018) 20 Cal.App.5th 701, 709-710 [4th Dist., Div. 2]; *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1388-1389 [2nd Dist., Div. 7]; *In re A.G.* (2012) 204 Cal.App.4th 1390, 1402 [1st Dist., Div. 3]; *In re Justin S.* (2007) 150 Cal.App.4th 1426, 1437-1438 [6th Dist.]; *In re H.A.* (2002) 103 Cal.App.4th 1206, 1215 5th Dist.].)

There is thus no question that the limited remand provided in our disposition in *In re M.C., supra*, H046923, was appropriate.

## 2. *Mother's Challenge to Limited Remand Is Not Cognizable*

A decision of the court of appeal becomes final as to that court 30 days after the filing of the opinion. (Rule 8.264(b)(1).) Upon such finality, the appellate court has no jurisdiction to either modify its decision (rule 8.264(c)(1)), or to grant rehearing (rule 8.268(a)(1)). Assuming review is not granted, an appellate court decision is final for all purposes when the time for supreme court review has expired and the remittitur has issued. (Rule 8.272; see *Siry Investments, L.P. v. Farkhondehpour* (2015) 238 Cal.App.4th 725, 730 ["appeal is not final until the court has issued its decision *and* issued the remittitur"].) Once an appellate decision has become final, "[i]t is law of the case and is binding upon the parties and the trial court. [Citation.] (*Ducoing Management, Inc. v. Superior Court* (2015) 234 Cal.App.4th 306, 315 (*Ducoing Management*).)

" 'The doctrine of "law of the case" deals with the effect of the first appellate decision on the subsequent retrial or appeal: The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case.' [Citation.]" (*Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 491, italics omitted (*Morohoshi*).) "The law of the case must be adhered to both in the lower court and upon subsequent appeal. [Citation.]" (*Santa Clarita Organization for Planning the Environment v. County of Los Angeles* (2007) 157 Cal.App.4th 149, 156.) It has been explained that the law of the case "doctrine promotes finality by preventing relitigation of issues previously decided. [Citation.] . . . 'The doctrine is one of procedure that prevents parties from seeking reconsideration of an issue already decided absent some significant change in circumstances.' [Citation.]" (*Sargon Enterprises, Inc. v. University of Southern California* (2013) 215 Cal.App.4th 1495, 1505; see also *Joyce v. Simi Valley Unified School Dist.* (2003) 110 Cal.App.4th 292, 304 [" '[l]itigants are not

12

free to continually reinvent their position on legal issues that have been resolved against them by an appellate court' "].)

Mother's appeal involves a challenge to this court's prior disposition of *In re M.C.*, *supra*, H046923. Her statement that "the limited reversal and order to reinstate the termination of parental rights . . . must be reconsidered and reversed" clearly demonstrates the nature of her appellate challenge. Mother, however, did not challenge this court's limited reversal in *In re M.C. in that prior appeal*. Indeed, she *specifically requested* the limited reversal disposition, concluding in her opening brief: "[T]he findings and orders terminating parental rights must be conditionally reversed and the matter remanded for compliance with the inquiry and notice provisions of the ICWA."

Mother's challenge to the limited remand in *In re M.C.*, *supra*, H046923, cannot be considered here. In this regard, the appellate court's decision in *Ducoing Management, supra*, 234 Cal.App.4th 306 is instructive. In that case, there had been a previous appeal from a judgment entered against two plaintiffs after the trial court had granted nonsuit. (*Id.* at pp. 309, 311.) The appellate court had affirmed the judgment of nonsuit as against one plaintiff, but had reversed the judgment " 'in all other respects,' and [had] remanded the matter for retrial by the second plaintiff[, e]ssentially [leaving the] plaintiffs' claims intact, holding they properly were pursued in their entirety by the second plaintiff." (*Id.* at p. 309.) On remand, the trial court permitted the defendants to execute against the plaintiff who had been unsuccessful on appeal to recover under a costs award that was part of the prior judgment. (*Id.* at p. 312.) That plaintiff challenged the trial court's action in a petition for extraordinary writ, which was granted. (*Ibid.*) The Court of Appeal held: "Our reversal was unqualified ('in all other respects'), with the single exception of the judgment of nonsuit as to petitioner. It necessarily included the cost award, which was contained in a separate and distinct portion of the judgment decreeing that petitioner take nothing from real parties in interest. There is nothing in our

opinion to suggest that the cost portion of the second paragraph of the judgment survived our reversal '[i]n all other respects.' " (*Id.* at p. 314.)

In the writ proceeding, the defendants (real parties in interest) argued that the court in the prior appellate opinion had "made a 'mistake of fact' " in its reversal of the costs award, and it had made "other alleged 'mistakes of fact' in [its] original opinion." (*Ducoing Management, supra*, 234 Cal.App.4th at p. 314.) The appellate court rejected real parties' stale challenges, reasoning: "A petition for rehearing is the correct remedy to address material inaccuracies or omissions in a disposition. 'It is not inconceivable that the directions of a reviewing court may be imperfect, or impractical of execution. Under those circumstances the aggrieved party has his remedy in a petition for rehearing.' [Citation.] [¶] But real parties in interest's chosen remedy is well past its expiration date. We issued the [prior appellate] opinion on September 9, 2013. The time for real parties in interest to have called our attention to any alleged omissions or misstatements in our original opinion was by petition for rehearing within 15 days of the filing of the decision, not more than a year later. [Citation.] Real parties in interest did not file any objection to our disposition reversing the judgment in 'all other respects,' nor did they ask us to explain or amplify whether this disposition vacated the cost award. Our disposition became final as to this court on October 9, 2013. [Citation.] It is law of the case and is binding upon the parties and the trial court. [Citation.] We will not revisit the ruling here." (*Id.* at p. 314-315.)

Likewise, mother's remedy to address any perceived errors or omissions in this court's appellate decision in *In re M.C.*, *supra*, H046923—including the specifics of the limited remand challenged in the present appeal—was a petition for rehearing. (*Ducoing Management, supra*, 234 Cal.App.4th at pp. 314-315.) Our decision in *In re M.C.*, *supra*, H046923, was filed September 24, 2019, and it became final as to this court on October 24, 2019. Mother was required to have filed a petition for rehearing on or before

14

October 9, 2019.  (See rule 8.268(b).)[9]  Instead, she asserts this challenge to the prior appeal's disposition in the present appeal—one which was filed over one year after our decision in *In re M.C.*, *supra*, H046923 became final.  Our disposition in *In re M.C.* "is law of the case and is binding upon the parties and the trial court.  [Citation.]  We will not revisit the ruling here." (*Ducoing Management, supra*, at p. 315.)

We acknowledge that "[o]n a subsequent appeal, the court can exercise discretion not to apply the law of the case when necessary to avoid an 'unjust decision.' " (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2020) ¶ 14:188, quoting *Morohoshi*, *supra*, 34 Cal.4th at pp. 491-492; see also *Amato v. Mercury Cas. Co.* (1997) 53 Cal.App.4th 825, 835 ["doctrine of law of the case is a discretionary policy which should not be followed if it results in a manifestly unjust decision"].)  Here, mother had had no contact with the minor for approximately one and one-half years.  Mother had not appeared at any of the five hearings the court conducted after remand, and she had not even communicated with her counsel.[10]  Counsel advised the juvenile court that she therefore "[did not] know [mother's] position on the .26," and that as her counsel, she would "have no comment today" regarding reinstatement of parental rights.  Further, the minor's counsel argued that reinstatement of parental rights would not be in minor's best interests.  (See *In re Charlotte C.* (2019) 33 Cal.App.5th 404, 428 [counsel for dependent child has "the duty to investigate as necessary to

---

[9] We note that, prior to the filing of our opinion in *In re M.C.*, *supra*, H046923, mother had notice that the maternal grandmother had changed her position regarding adoption and had stated a preference of becoming the minor's legal guardian; the Department's written report advising the court and the parties concerning this change of circumstances was dated August 28, 2019.  Mother thus could have raised this development as it related to our disposition in *In re M.C.*, *supra*, H046923, in a petition for rehearing between September 24 and October 9, 2019.

[10] At the September 14, 2020 hearing, mother's counsel stated she had had no contact with her client since counsel's reappointment in the case seven months earlier, in February 2020.

understand the child's circumstances and make recommendations based on an evaluation of the child's best interests"].)[11]  There was no rebuttal by mother's counsel to this assertion by minor's counsel.  These circumstances do not justify ignoring the application of the law of the case; this is not an instance in which exercising such discretion is required to avoid an "unjust decision."  (*Morohoshi*, *supra*, 34 Cal.4th at p. 491.)

Notwithstanding mother's lack of participation in the proceedings and her failure to request reinstatement of her parental rights,[12] mother argues that the conditions here show a flaw in the limited reversal practice utilized in appeals based upon noncompliance with the ICWA because it has resulted here in "this child . . . becom[ing] a legal orphan." Mother argues that as a result of its required adherence to the limited remand in this case, "the juvenile court was left without authority to reinstate parental rights despite the change in the permanent plan to guardianship."  We reject mother's contention that the limited remand under the circumstances of this case created an injustice that compels that it "be reconsidered and reversed."  As the juvenile court noted below—and as mother acknowledges in her opening brief—there *is* a statutory vehicle to petition for reinstatement of parental rights after their termination at a 366.26 hearing; that procedure may be employed *by the minor*, not by the parent.

As a general rule, an order terminating parental rights "is conclusive and binding" upon the parents and child and is not subject to being later set aside or modified by the

---

**11** Although counsel for the Department did not address at the hearing whether reinstatement of parental rights would be in the minor's best interests, the Department, in its report prepared in connection with the 366.26 hearing, had recommended that there be no contact with the parents:  "There shall be no physical contact or communication of any kind between the child and the parents because it is detrimental to the physical and/or emotional well-being of the child."

**12** As we discuss in greater detail, *post*, we disagree with mother's assertion on appeal that her counsel made a request at the September 14, 2020 hearing for reinstatement of parental rights.

16

juvenile court.  (§ 366.26, subd. (i)(1).)[13]  A statutory exception, however, is found under subdivision (i)(3) of section 366.26.  That provision permits the child to file a petition with the juvenile court (1) where the child has not been adopted for more than three years after the parental rights termination order and where the court has determined that adoption is no longer the permanent plan, or (2) at any time where the child and the agency or adoption agency responsible for supervising the child stipulate that it is no longer likely that the child will be adopted.  (*Ibid.*)[14]  The *Francisco W* court concluded that where changed circumstances during an appeal make adoption unlikely, the "limited reversal practice is not an obstacle to the juvenile court preventing the child from becoming a legal orphan."  (*Francisco W*, *supra*, 139 Cal.App.4th at p. 710.)  The court

---

[13] "Any order of the court permanently terminating parental rights under this section shall be conclusive and binding upon the child, upon the parent or parents . . . .  After making the order, the juvenile court shall have no power to set aside, change, or modify it, except as provided in paragraph (2) [*sic*], but nothing in this section shall be construed to limit the right to appeal the order."  (§ 366.26, subd. (i)(1).)  It is plain that the reference in the second sentence to "paragraph (2)"—where paragraph (2) in fact refers to tribal adoption orders and does not concern instances in which the juvenile court may set aside, change or modify a parental rights termination order—is in error and should be construed as a reference to paragraph (3).  Current subdivision (i)(3) of the statute was formerly numbered (i)(2), but it was renumbered in 2009 with the enactment of a new subdivision (i)(2) that concerned tribal adoption orders.  (See Stats.2009, ch. 287, § 15.)

[14] "A child who has not been adopted after the passage of at least three years from the date the court terminated parental rights and for whom the court has determined that adoption is no longer the permanent plan may petition the juvenile court to reinstate parental rights pursuant to the procedure prescribed by Section 388.  The child may file the petition prior to the expiration of this three-year period if the State Department of Social Services, county adoption agency, or licensed adoption agency that is responsible for custody and supervision of the child as described in subdivision (j) and the child stipulate that the child is no longer likely to be adopted. . . .  If it appears that the best interests of the child may be promoted by reinstatement of parental rights, the court shall order that a hearing be held . . . .  The juvenile court shall grant the petition if it finds by clear and convincing evidence that the child is no longer likely to be adopted and that reinstatement of parental rights is in the child's best interest."  (§ 366.26, subd. (i)(3).)

observed that the California Legislature had "addressed the problem of postjudgment changes in circumstances affecting a child's adoptability by enacting [former] section 366.26, subdivision (i)(2) [now § 366.26, subd. (i)(3)]." (*Id.* at p. 709.) The appellate court concluded that this provision permitting the child's filing of a petition to reinstate parental rights under certain circumstances "provide[d] the juvenile court with adequate opportunity to restore parental rights if the circumstances demand it." (*Ibid.*) We agree with the court in *Francisco W.*, and we find no need in this case to revisit the limited reversal provided in *In re M.C.* as requested by mother.[15]

### 3.      *Appellate Challenge to Limited Remand Is Forfeited*

The Department argues that mother's appellate challenge to the limited remand was forfeited because she failed to raise the objection below. Mother responds that the claim is not forfeited because she made a request to the juvenile court below that parental rights be reinstated notwithstanding the limited remand in *In re M.C.*, *supra*, H046923. As we have concluded, mother's challenge is barred under the law of the case doctrine. We agree with the Department that, in any event, mother's appellate challenge is forfeited.

---

[15] For the first time in her reply brief, mother raises the argument that the juvenile court erred based upon its "failure to reinstate the previous order selecting adoption as the permanent plan and terminating parental rights after compliance with the notice provisions of the ICWA." Her claim is apparently that the court's order was not in compliance with the limited remand in *In re M.C.*, *supra*, H046923, because it did not reinstate the portion of the prior order finding the minor adoptable. We reject this belated argument as being procedurally improper. (See *Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11: "Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant.") Further, the argument ignores the text of our limited remand order, which provided that, after determining ICWA compliance and the ICWA's inapplicability, "the order terminating parental rights shall immediately be reinstated and further proceedings shall be conducted, as appropriate." (*In re M.C., supra*, H046923, at p. *16.)

"[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.]" (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. omitted, superseded on other grounds by statute as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 962.) "The forfeiture doctrine has been applied in dependency proceedings in a wide variety of contexts, including cases involving failures to obtain various statutorily required reports [citation]; failure to object to the adequacy of an adoption assessment [citations]; failure to request an alternative placement [citation]; and failure to require expert testimony and to make the required findings using the beyond-a-reasonable-doubt standard as mandated by ICWA [citation]." (*In re G.C.* (2013) 216 Cal.App.4th 1391, 1398-1399; see also *Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340, 1347-1348, fn. 5 [forfeiture of challenge to reasonableness of services]; *In re Precious J.* (1996) 42 Cal.App.4th 1463, 1476 [forfeiture of challenge to adequacy of case plan].)

In this case, at no time did mother object below to the juvenile court's reinstatement of its prior order terminating parental rights. Mother did not appear at the combined ICWA compliance and 366.26 hearing And her counsel—after indicating to the juvenile court that she had had no communication with her client and did not know mother's position regarding the 366.26 hearing—stated that she would "have no comment today" about the reinstatement of parental rights. Thus, contrary to mother's claim, she did not "request[ that] parental rights be reinstated due to the proposed change in the permanent plan to legal guardianship."[16] Therefore, even if her appellate challenge

---

[16] Mother's counsel suggested as a matter of theory only that the juvenile "[c]ourt *could* reinstate parental rights" in light of the change in the permanent plan. (Italics added.) But counsel did *not* assert on behalf of mother that the juvenile court *should* disregard the limited remand disposition in *In re M.C.* and *should* reinstate parental rights. The entirety of the presentation by mother's counsel concerning the 366.26 hearing was as follows: "Thank you, Your Honor. [¶] I haven't had any contact

were not precluded under the doctrine of law of the case, mother's claim that the juvenile court should have reinstated parental rights is forfeited. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 221-222.)

### III. DISPOSITION

The September 14, 2020 order after the Welfare and Institutions Code section 366.26 hearing and hearing on compliance with the Indian Child Welfare Act is affirmed.

---

with [mother] since being reappointed to this case. So, ultimately I don't know her position on the .26. [¶] I will just note that, given the change in recommendation to legal guardianship, that I believe the Court could reinstate parental rights based on that change, and the caregiver[']s unwillingness now to adopt. But ultimately, I will have no comment today." The record is clear that mother did not object to reinstatement of the order terminating parental rights.

20

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

DANNER, J.

*In re M.C.; DFCS v. K.D.*
**H048615**